## GEORGIA RAILWAY AND POWER COMPANY *et al. v.* TOWN OF DECATUR.

## GEORGIA RAILWAY AND POWER COMPANY *et al. v.* MAYOR AND COUNCIL OF COLLEGE PARK.

1. A judgment of a trial court granting or refusing an injunction, where the same depends upon a question of law, is, upon its affirmance by the Supreme Court, a final adjudication of such question.

2. The rulings of the Supreme Court, upon the interlocutory order of the trial judge granting an injunction, become the law of the case as to the particular case.

3. An affirmance by the Supreme Court of the order of the lower court granting a temporary injunction is a ruling upon all questions of law involved, though the legal contentions may not have been specifically enumerated or mentioned in the opinion of the court.

Nos. 3019, 3081. APRIL 29, 1922.

Equitable petitions. No. 3019 before Judge Hutcheson. DeKalb superior court. December 16, 1921. No. 3081 before Judge George L. Bell. Fulton superior court. January 18, 1922.

Chief Justice Fish and Associate Justices Atkinson, Hill, and Hines being disqualified, Judges Moses Wright, P. W. Meldrim, W. W. Sheppard, and R. C. Bell were designated to sit in their stead.

*J. Prince Webster, Rosser, Slaton, Phillips & Hopkins,* and *Colquitt & Conyers,* for plaintiffs in error.

*Harwell, Fairman & Barrett, J. Howell Green,* and *George P. Whitman,* contra.

WRIGHT, Judge. The present case comes up upon the final hearing in the court below. The exceptions are to the rulings sustaining the general demurrers, the declination of certain requests to charge, and the direction of a verdict in favor of a permanent injunction, and the final decree thereon. The case thus comes before the court the second time for review. The first appeal was from the interlocutory order of the trial judge granting a temporary injunction against the plaintiffs in error. A decision therein was rendered September 27, 1921. 152 *Ga.* 143 (108 S. E. 143, 615). Upon the hearing of this first appeal the court held that the decision of the court in the mandamus case, *Georgia Ry. &c. Co.* v. *Railroad Commission of Georgia,* 149 *Ga.* 1 (98 S. E. 696, 5 A. L. R. 1), was controlling upon the questions then under consideration, and a request for a review of the mandamus case was refused by this court; and, immediately following the refusal to review the mandamus case, the court held: "And the court is further of the opinion, that, independently of this ruling as to the case we are asked to review, the Georgia Railway and Power Company was without authority to fix the rate which the plaintiffs in the court below sought to enjoin; and consequently the court did not err in granting the interlocutory

injunction." The effect of this ruling was, that not only the law in the mandamus case was controlling, but that independently, under the questions of law presented in the appeal then under review, the ruling of the trial judge was without error.

While the plaintiff in error now insists that some ten distinct points of attack upon the validity of the contract are made in the present appeal that were not made in the mandamus case (149 *Ga.* 1), it is not and can not be insisted that the identical questions of law were not involved upon the first hearing of the interlocutory injunction (152 *Ga.* 143, 108 S. E. 615) as are now involved upon this second appeal.

But it is insisted by plaintiff in error that one question of constitutional objection to the contract, to wit, that it was violative of section 6389 of the Civil Code, " was not raised or pleaded when the case at bar was before this court, . . and, though discussed in argument, was not considered in the opinion, presumably because it was not then properly before the court." The question raised upon this constitutional objection, if not clearly stated in the pleadings, was certainly argued fully and exhaustively before the court. Supplemental briefs and reply briefs were filed upon the effect of the constitutional question involved in section 6389 of the Civil Code, and the ruling in the case of City of San Antonio *v.* San Antonio Public Service Corporation, 255 U. S. 547 (41 Sup. Ct. 428, 65 L. ed. 777), now cited in support of this very constitutional objection, was then cited and was considered by this court in its ruling.

Upon a careful inspection of the entire record, we are unable to find a question of law or fact that was not involved in the former hearing upon the interlocutory order granting the injunction, or in the mandamus case. The same questions of law are reiterated by amendment, reclothed and elaborated; but it is not difficult, upon a careful inspection, to find that we have met them before.

1. This entire litigation, so often before the courts, has revolved continuously around the single question as to whether the contract between the Georgia Railway and Power Company and the Town of Decatur was a valid, subsisting contract. This question has twice been definitely ruled in favor of the validity of the contract;

and the last ruling (152 *Ga.* 143, 108 S. E. 615) is clearly res adjudicata, in our opinion, of the present case.

In the case of *Ingram* v. *Mercer University,* 102 *Ga.* 226, 228 229 (29 S. E. 273), Chief Justice Simmons delivering the opinion, this court reaffirmed the decision in the case of *City of Atlanta* v. *Methodist Church,* 83 *Ga.* 448 (10 S. E. 231), holding that " a judgment of a trial court granting or refusing an injunction, when the same depends entirely upon a question of law, is, upon its affirmance by the Supreme Court, a final adjudication of such question." The court in the case of *Ingram* v. *Mercer University,* supra, said: "Under the equity practice which has prevailed in this State since the passage of the act of October, 1870 (Civil Code, § § 5540, 5558), we think that decision is sound and proper. Under that act many cases are brought to each term of this court, which involve no questions but those purely of law. The trial judge passes upon the same, and either grants or refuses an injunction. For a speedy determination of the matter, the law provides a ' fast ' writ of error to this court, and further provides that this court shall advance the same upon its dockets, when requested so to do by either party. This has been the practice since 1870; and as far as we know or can ascertain from consulting our reports, the decisions of this court made upon pure questions of law, upon interlocutory injunctions, have been always regarded as final and controlling upon the trial judge on the final trial before a jury. If it were not so, a great burden has been unnecessarily placed upon this court. A great many of the cases upon these fast writs of error are brought here upon questions purely legal, and this court spends hours, days, and even weeks in investigating those questions; and to say that after all of this labor a decision made in such a case is merely advisory, and does not bind the trial judge or this court in the subsequent litigation between the same parties, seems to us to be absurd. During this term of court a case was brought here from the City of Augusta, involving the acts and contracts of the city and of a street-railway company in that city, under the charter of the city and of the railway company, and certain contracts entered into by the city, the street-railway company and certain steam-railroad companies whose lines ran into the city, involving only the construction of these charters and of these contracts, matters not of fact but of

pure law. The decision of these questions occupied this court for days, in order to arrive at the proper construction of the law upon the charters and contracts. According to the contention of counsel for plaintiffs in error, when this case is called for final decree in the superior court, the judge thereof can treat this decision as a nullity, and if the case be brought again to this court, the same grounds may be insisted upon and we will not be bound by the law as declared in that case."

The City of Augusta case, above referred to in the quoted opinion, as an illustration of the reason for the ruling stated, is, upon inspection, a case remarkably similar to the one decided by this court (152 *Ga.* 143, 108 S. E. 615), and now for review upon a second appeal. Note in connection with the decision in the 102 *Ga.* 226, the citations of similar authority, as to the rulings upon interlocutory injunctions becoming res adjudicata upon the second appeal. *Guess* v. *Stone Mountain Granite &c. Co.,* 67 *Ga.* 215; *Iverson* v. *Saulsbury,* 68 *Ga.* 790, 73 *Ga.* 733; *Bailey* v. *Ross,* 68 *Ga.* 735, 71 *Ga.* 771; *Conyers* v. *Gray,* 67 *Ga.* 329, 70 *Ga.* 349; *Smith* v. *Hornesby,* 58 *Ga.* 529, 70 *Ga.* 552; *Mayor etc.* v. *Simmons,* 96 *Ga.* 477 (23 S. E. 508), 99 *Ga.* 400 (27 S. E. 710); *National Bank of Athens* v. *Carlton,* 96 *Ga.* 469 (23 S. E. 388). See also *Savannah etc. Railway* v. *Mayor. etc. of Savannah,* 115 *Ga.* 137 (41 S. E. 592); *Collins* v. *Carr,* 116 *Ga.* 39 (42 S. E. 373); *Peak* v. *Simmons,* 119 *Ga.* 63 (45 S. E. 698).

2. The rulings of the court upon an interlocutory grant of injunction become the " law of the case " upon the final hearing.

In the opinion in *Ingram* v. *Mercer University,* supra, this court said: " In the case of *Iverson* v. *Saulsbury, Respess & Co.,* 68 *Ga.* 790, it appeared that Iverson, as trustee for his wife and her children, obtained an order from the judge at chambers, allowing him to mortgage the trust property for the purpose of supporting and maintaining the cestui que trust. When it was sought to foreclose this mortgage, the cestui que trust filed a bill asking an injunction against the foreclosure, upon grounds therein set out. Upon a demurrer the bill was sustained, the case was brought to this court, and a majority of this court held, Jackson, C. J., dissenting, that " While a chancellor sitting at chambers, on full notice to all parties, may order a sale of trust property, he has no power to grant authority to a trustee to mortgage a trust

estate, and a mortgage so given will not bind the cestui que trust."
When the case came on for final trial in the superior court, the
trial judge followed the ruling of this court. The case was again
brought here on that and other matters; and this court held that
it was bound by the former decision, that, " although the present
bench disapprove of the majority decision stated, it is binding in
this case." In the opinion it was said: " Whether this decision
be right or wrong, it is the law of the case; it is res adjudicata."
The ruling in the previous case was declared to be the law of the
case, although in *Weems* v. *Coker, 70 Ga.* 746, the court had
disapproved and expressly overruled the principle laid down in
68 *Ga.* 790. While it was not the law of the State at the time the
second case (*Saulsbury, Respess & Co.* v. *Iverson, 73 Ga.* 733)
was decided, yet it shows that this court felt bound to enforce the
law as decided when the case was first here on the injunction.
They ruled that while not the law generally, it was the law of
that particular case." See also *Southern Bell Tel. &c. Co.* v.
*Glawson,* 140 *Ga.* 507 (79 S. E. 136).

3. As before stated, the sole question at issue upon the former
hearing of this case was whether or not the contract between the
Georgia Railway and Power Company and the Town of Decatur
was a valid, subsisting contract. Its validity was attacked in
a number of ways, and many constitutional objections were raised
thereto; but when this court reaffirmed the ruling in the mandamus
case and held that, independently of the mandamus order, the
trial court did not err in granting the interlocutory order, it
was an adjudication of every attack upon the validity of the con-
tract in question, even though the numerous objections may not
have been specifically ruled upon in the opinion of the court.
See, in this connection, *McWilliams* v. *Walthall, 77 Ga.* 7; *Savan-
nah etc. Railway* v. *Savannah,* 115 *Ga.* 137 (41 S. E. 592); *Hughes*
v. *Morrison,* 141 *Ga.* 476 (81 S. E. 202); State of New Mexico
v. County Commissioners, 22 N. M. 562 (166 Pac. 906, 1 A. L. R.
720, 725).

In the light of the rulings above stated, we are convinced that
this case has had its day in court. The validity of this contract
was attacked in the mandamus case heretofore referred to, and in
the case now at bar. It has had its day in court, and the ruling
in the 152 *Ga.* 143 (108 S. E. 615) is not only res adjudicata

of every issue involved in the present hearing, but is the " law of the case " in the case now under review.

What is said in the foregoing opinion as to the case of Georgia Railway and Power Company *v.* Town of Decatur is applicable to and controlling in the other case, Georgia Railway and Power Company *v.* Mayor and Council of College Park.

*Judgment affirmed. All the Justices concur.*